# In the United States Court of Federal Claims

No. 21-1415
Filed: June 9, 2022

|  |  |
|---|---|
| BOARD OF SUPERVISORS OF ISSAQUENA COUNTY, MISSISSIPPI, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) |

*Ronald V. Johnson, IV*, Deakle-Johnson Law Firm, PLLC, Hattiesburg, MS for plaintiff.

*Brad Eric Leneis*, U.S. Department of Justice, Environment & Natural Resources Division, Washington, D.C. for defendant.

**OPINION & ORDER**

*SMITH*, **Senior Judge**

Before the Court is defendant's Motion to Dismiss the Complaint under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for failure to state a claim upon which relief can be granted. For the reasons discussed below, the Court grants defendant's Motion to Dismiss.

**I.      Background**

Plaintiff, the Board of Supervisors of Issaquena County, Mississippi, is the "governmental body responsible for the general operation and governmental functions of Issaquena County." *See* Plaintiff's Amended Complaint at 4, ECF No. 9 [hereinafter Am. Compl.]. As part of its governmental function, plaintiff owns, maintains, or is otherwise responsible for "right of ways, easements, and other governmental infrastructure which provide[s] inter-alia for the transportation needs" of people within Issaquena County ("the County"). *See id*. at 2. The County lies in a geographical region known as the Mississippi Delta, "bordering the Mississippi River on the west and the Yazoo River to the east." *Id*. at 1, 6; *see also* Defendant's Motion to Dismiss at 2–3, ECF No. 10 [hereinafter Def.'s Mot. to Dismiss].

The Mississippi Delta routinely experiences periods of excessive rainfall which causes flooding. Am. Compl. at 5–6. In 1936, Congress considered a plan to alleviate flooding in the

region by constructing a floodway to divert excess water from the Mississippi River, but the plan was abandoned in 1941 and the floodway was never built. *Id*. at 5–6; Def.'s Mot. to Dismiss at 13; *see also* 33 U.S.C. §§ 702a-1, 702a-12(a). Instead, the government built the Yazoo Backwater Project (the "Project"), a levee system to shield portions of the County near the confluence of the Mississippi and Yazoo rivers from flooding. Am. Compl. at 5.

The Project uses floodgates, such as the Steele Bayou Control Structure, and levees to control flood levels during periods of high-water stages along the Mississippi and Yazoo Rivers. *Id.* at 6. During these periods, upstream flooding can occur when the rivers are saturated by rain, exceed their capacity to pass the accumulated rainfall, and water backs up in the river downstream. *See id*. at 5–6; *see also* Def.'s Mot. to Dismiss at 1. This process is known as "backwater flooding." *See* Am. Compl. at 5–6; *see also* Def.'s Mot. to Dismiss at 1, 3. When the Mississippi and Yazoo Rivers experience high-water levels, the floodgates at the Steele Bayou Control Structure close to prevent backwater flooding in the drainage area protected by the Project's levee system (the "Yazoo Backwater area"). Am. Compl. at 6. Anytime the water level behind the floodgates (i.e., the landside) is higher than the water level in front of the floodgates (i.e., the riverside), and above the 70-foot water level, the floodgates are opened to drain runoff water from the Yazoo Backwater area into the Yazoo and Mississippi rivers. *See* Final Supplement No. 2 to the 1982 Yazoo Area Pump Project Final Environmental Impact Statement [hereinafter 2020 EIS], Appx. G: Engineering Report at 69.[1] When the water level on the riverside is higher than that of the landside, the floodgates are closed to prevent backwater flooding. *Id*.

Once the floodgates close, water does not pass between the Yazoo Backwater area and the rivers. Am. Compl. at 6. Any additional rain that falls in the drainage area behind the floodgates can pond and cause flooding in the Yazoo Backwater area. *Id*. However, the Steele Bayou Control Structure operates to reduce the water level in the Yazoo Backwater area and only holds back excess water on the landside from draining when the water level on the riverside is higher (i.e., when backwater flooding will occur). *See* 2020 EIS, Appx. G at 65–66. The Project originally contemplated a pump station near the Steele Bayou Control Structure to drain ponded water behind the levees, but it was never installed. Am. Compl. at 6; *see also* Def.'s Mot. to Dismiss at 11–12.

Starting in the fall of 2018, the Mississippi River experienced an extended period of near record-high water levels, forcing an extended closure of the gates at the Steele Bayou Control Structure to prevent the Mississippi River from flooding the Yazoo Backwater area behind the floodgates. Am. Compl. at 7; *see also* 2020 EIS, Appx. G at 65. Simultaneously, large amounts of rainfall accumulated behind the Project's levees, affecting 550,000 acres of the Yazoo

---

[1] In considering a motion to dismiss, the Court may properly take judicial notice of the contents of public documents. *See Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999). In this instance, both parties have presented the 2020 EIS in their respective briefs to the Court and have not disputed its factual content. *See* Defendant's Motion to Dismiss at 3, 5, ECF No. 10; *see also* Plaintiff's Opposition to the United States' Motion to Dismiss at 7, ECF No. 11.

Backwater area, including parts of Issaquena County. Am. Compl. at 7; *see also* 2020 EIS, Appx. G at 65. The region remained in flood until the floodwaters receded in August 2019. Am. Compl. at 7; *see* 2020 EIS, Appx. G at 66. The prolonged flooding damaged approximately 687 residences and eroded and damaged infrastructure, including roads, culverts, pipes, and drainage structures owned and maintained by the Plaintiff. Am. Compl. at 4, 7–8.

On June 1, 2021, plaintiff filed its Complaint in this Court, seeking relief for defendant's alleged taking of property "without just compensation in violation of the Fifth Amendment to the United States Constitution." *See* Complaint at 9, ECF No. 1. On October 4, 2021, plaintiff filed its Amended Complaint. *See* Am. Compl., ECF No. 9. On November 18, 2021, defendant filed its Motion to Dismiss. *See* Def.'s Mot. to Dismiss, ECF No. 10. On December 16, 2021, plaintiff filed its response. *See* Plaintiff's Opposition to the United States' Motion to Dismiss, ECF No. 11 [hereinafter Pl.'s Resp.]. On January 11, 2022, defendant filed its reply. *See* United States' Reply in Support of its Motion to Dismiss, ECF No. 14 [hereinafter Def.'s Reply]. Defendant's Motion to Dismiss is fully briefed and ripe for review.

## II. Motion to Dismiss

### A. Legal Standard

Defendant moves to dismiss plaintiff's Complaint under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Def.'s Mot. to Dismiss at 22.

To survive dismissal, plaintiff's Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" when the "plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Importantly, "facial plausibility" is "not akin to a probability requirement"; rather, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]hile the pleading standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions.'" *Peraton Inc. v. United States*, 146 Fed. Cl. 94, 100 (2019) (internal citations omitted).

When reviewing the complaint, the Court will assume the veracity of well-pleaded factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. However, the Court "must not mistake legal conclusions presented in a complaint for factual allegations which are entitled to favorable inferences." *Peraton*, 146 Fed. Cl. at 100 (citations omitted). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or be satisfied with "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555 (citations omitted). Furthermore, the Court is not required to accept allegations that "contradict matters properly subject to judicial notice or by exhibit." *Terry v. United States*, 103 Fed. Cl. 645, 652 (2012) (citations omitted).

Determining whether a complaint has stated a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2)). The Court will analyze whether well-pleaded factual allegations nudge plaintiff's claim "across the line from conceivable to plausible." *Id*. at 680. A complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle [them] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### B. Discussion

Plaintiff seeks relief for defendant's alleged taking of property "without just compensation in violation of the Fifth Amendment to the United States Constitution." *See* Am. Compl. at 9. According to plaintiff, the County has suffered repeated flooding because of defendant's "acts or inactions" involving the levee system used to manage high-water stages on the Mississippi and Yazoo rivers. *See id.* at 2, 6, 9. Specifically, plaintiff alleges that the closure of the Steele Bayou Control Structure caused flooding of its property and if the government had constructed a pumping system or alternative drainage route as originally planned, "the current flooding and taking of [its] property also would not have occurred." *Id*. at 8.

Defendant argues that plaintiff's Complaint is defective in two respects: (1) plaintiff cannot state a valid takings claim premised on government *inaction*, as opposed to government *action*; and (2) plaintiff's allegations fail to establish a necessary element of a takings claim, i.e., causation between government action and plaintiff's injury. *See* Def.'s Mot. to Dismiss at 16. In response, plaintiff insists that its claim is based on both affirmative government action and inaction. *See* Pl.'s Resp. at 10; *see also* Pl.'s Resp. at 13 ("it was both the *actions* of the government in building the levees and water control structures, as well as its *inactions* in failing to complete the pumps, that led to [the] taking." (emphasis in original)). Plaintiff further argues that defendant applies a "heightened pleading standard" regarding causation and that it has "clearly pled a cause of action that is 'plausible on its face.'" *Id*. at 15 (citation omitted).

### i. Government Inaction

It is well-settled that a plaintiff cannot bring a Fifth Amendment takings claim for flooding caused by government inaction. *See, e.g.*, *United States v. Sponenbarger*, 308 U.S. 256 (1939); *St. Bernard Parish Gov't v. United States*, 887 F.3d 1354 (Fed. Cir. 2018); *Georgia Power Co. v. United States*, 633 F.2d 554 (Ct. Cl. 1980). The government may only be liable for property loss that is the "direct, natural, or probable result of authorized government *action*." *St. Bernard Parish Gov't*, 887 F.3d at 1359–60 (citing *Arkansas Game & Fish Comm'n v United States*, 568 U.S. 23 (2012)) (emphasis added). Thus, the government cannot be liable for any takings claim which stems from government inaction because takings claims are premised on affirmative acts by the government. *See id*. at 1360.

Here, plaintiff makes allegations of government inaction which cannot support a Fifth Amendment takings claim. Plaintiff alleges that its injury "is the direct, natural and foreseeable result of the *affirmative acts or inaction* of the United States." Am. Compl. at 3 (emphasis added); *see also* Am. Compl. at 2, 8–9; Pl.'s Resp. at 10). Specifically, plaintiff points to defendant's failure to construct pumps to remove accumulated ponding behind the levee system and a floodway for the Yazoo Backwater area as a cause for its injury. *See* Am. Compl. at 6 ("[T]he pumping facilities have never been completed, and no alternative drainage system has been devised."); *see also* Am. Compl. at 7 ("Because the pumps were never completed, an estimated 687 homes were flooded . . . ."). Plaintiff alleges that "[h]ad the pumps been installed as per the original plans of the Yazoo Backwater Project, or alternative drainage routes been constructed, the current flooding and taking of [its] property also would not have occurred." *Id*. at 8. In other words, plaintiff argues that the government should have taken some action to prevent the flooding that occurred. *See id*. Thus, plaintiff's takings claim is plainly based on government inaction.

Government inaction, however, cannot serve as the basis for a valid Fifth Amendment takings claim. The Supreme Court and the Federal Circuit have rejected similar claims asserting takings liability against the federal government when premised on government inaction or failure to act. *See United States v. Sponenbarger*, 308 U.S. 256, 265 (1939) (holding that no taking occurred when the government-built flood protection system, built to safeguard a large area from existing flood hazards, was inadequate to protect plaintiff's property from flooding); *see also St. Bernard Parish*, 887 F.3d at 1357–58, 1360 (holding that the government's failure to maintain or modify a navigational channel did not support a valid takings claim). In *Sponenbarger* and *St. Bernard Parish*, the Court did not find a taking when a government-built flood protection system or navigational channel flooded plaintiff's property because these claims were premised on government inaction. *Id*.; *St. Bernard Parish*, 887 F.3d at 1357–58, 1360. Similarly, plaintiff here fails to establish a valid takings claim because the government's liability cannot be premised on its failure to construct backwater pumps, a floodway for alternative drainage, or the Yazoo Backwater Project as originally planned, as these are allegations based on the government's failure to act. *See St. Bernard Parish*, 887 F.3d at 1360–62; *see Sponenbarger*, 308 U.S. at 265.

Alternatively, to the extent that plaintiff argues liability premised on government action and inaction *in combination* based on the holding *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, plaintiff misses the mark. *See* Pl.'s Resp. at 10–13. In *Upstream Addicks & Barker*, the Court found the government liable for a taking of plaintiffs' property based on the construction of the Addicks and Barker dams, which impounded the storm water left by Hurricane Harvey in flood-pool reservoirs. 146 Fed. Cl. 219, 255 (2019). While the Court noted that "aspects of the original design . . . were not completed" and that the government purchased less land to store runoff than originally planned, the Court did not premise its holding on the government's *inaction*. *See id*. at 231–233, 257–58. Rather, the Court found the plaintiffs' injury was the "direct result of the government's construction, modification, and operation of the Addicks and Barker Dams" because the government designed the dams' flood-pool reservoirs to encompass plaintiffs' properties. *Id*. at 254. Therefore, *Upstream Addicks*

reinforces that takings liability under the Fifth Amendment are premised on affirmative government action—not government inaction.

Therefore, plaintiff's allegations premised on the government's inaction—failure to construct backwater pumps, a floodway for alternative drainage, or even the Yazoo Backwater Project as initially planned—do not support a Fifth Amendment takings claim. *See St. Bernard Parish*, 887 F.3d at 1360–62.

### ii. Government Action

Plaintiff's takings claim is also premised on allegations that government action caused its property to flood. Am. Compl. at 8–9. Plaintiff's Complaint identifies two affirmative government actions as a basis for plaintiff's Fifth Amendment taking claim: (1) the operation of the Steele Bayou Control Structure; and (2) the construction of the Yazoo Backwater project. Am. Compl. at 8–9. Plaintiff alleges that the closure of the Steele Bayou Control Structure caused flooding in the Yazoo Backwater area. *See* Am. Compl. at 7; *see also* Am. Compl. at 8 ("The design, construction, and subsequent operation of the Yazoo Backwater Project and the Steele Bayou Control Structure by the [government] resulted in the direct, natural and foreseeable flooding of Plaintiff's property."). Plaintiff argues that, for the purposes of overcoming a motion to dismiss, the complaint need only "plausibly ple[ad] that the flooding on their lands is the direct, natural and foreseeable result of authorized government activity." Pl.'s Resp. at 15.

To plead a plausible takings claim, plaintiff must plead sufficient facts to support each element of its claim. *See Twombly*, 550 U.S. at 555. One such element is causation, where plaintiff bears the burden of proving that government action caused its injury. *See St. Bernard Parish*, 887 F.3d at 1362. "In order to establish causation, a plaintiff must show that in the ordinary course of events, absent government action, [it] would not have suffered the injury." *Id*. (citing *United States v. Archer*, 241 U.S. 119 (1916)). To properly allege causation for a Fifth Amendment taking in the flooding context, plaintiff must allege that its injuries caused by flooding would not have occurred "but-for" government action. *Id*. at 1364. For example, in *Archer*, the plaintiffs claimed that the government's construction of a dike on their property constituted a taking because the construction deposited sand and gravel on their land. 241 U.S. at 128. The Supreme Court remanded the case to determine "what would have occurred if the dike had not been constructed," due to the possibility that without the dike, a river may have permanently submerged the property anyways. *Id*. at 132. This "but-for causation" is a required element of any takings claim. *See St. Bernard Parish*, 887 F.3d at 1364.

As part of that causation analysis, the Court considers all relevant government actions, not just individual government actions, and whether these actions, in total, caused plaintiff's injury. *See id*. at 1364–65. For example, in *St. Bernard Parish*, the plaintiffs argued that the government's construction and operation of a navigational channel caused flooding on their property. 887 F.3d at 1364. The Federal Circuit, however, found that the plaintiffs failed to consider the impact of a related government levee project designed to reduce flooding on the plaintiffs' property. *Id.* at 1363–64. The Federal Circuit thus held that, as a matter of law, there

was no taking liability because the plaintiffs only considered "isolated government actions" and because the "plaintiffs failed to present evidence comparing the flood damage that actually occurred to the flood damage that would have occurred if there had been no governmental action at all." *Id.* Thus, plaintiff cannot demonstrate "but-for" causation without addressing all government action relevant to its injury.

Here, the Court finds that plaintiff has failed to allege causation for a Fifth Amendment taking. To demonstrate causation for a Fifth Amendment taking in the flooding context, plaintiff must allege that its injuries caused by flooding would not have occurred "but-for" the totality of all relevant government action. *See Archer*, 241 U.S. at 128, 132. In other words, plaintiff must allege sufficient facts to support that the government's construction and operation of the Yazoo Backwater Project caused more flood damage to plaintiff's property than if the Project had never been built. *See St. Bernard Parish*, 887 F.3d at 1364. However, plaintiff's Complaint does not contain such allegations and therefore does not support plaintiff's claim for a Fifth Amendment taking.

Plaintiff's allegations do not establish what damage would have occurred "but-for" the totality of government action—i.e., had the government not built the Yazoo Backwater Project at all. Plaintiff's allegations only address the fact that the Steele Bayou floodgates and backwater levees kept runoff within the Yazoo Backwater area, while ignoring the overall effect of the Yazoo Backwater Project on mitigating backwater flooding to plaintiff's land. *See* Am. Compl. at 8. Specifically, plaintiff does not consider whether the Yazoo Backwater Project caused more flooding to plaintiff's properties than if the Project was operated differently or was never constructed. *See generally*, Am. Compl.; *see also* Pl.'s Resp. at 15 (arguing that plaintiff "need not specifically aver" such a causal statement). Plaintiff repeats conclusory statements that its injury was "a direct, natural and foreseeable result" of government action. *See, e.g.*, Am. Compl. at 9. Plaintiff has therefore failed to properly plead causation—that its injuries caused by flooding would not have occurred "but-for" government action—which is an essential element of a Fifth Amendment takings claim. *See St. Bernard Parish*, 887 F.3d at 1362. Without properly alleging causation, plaintiff fails to state a Fifth Amendment takings claim and its Complaint should be dismissed under RCFC 12(b)(6).

### III. Conclusion

In summary, the Court concludes that plaintiff's allegations of government inaction do not state a valid takings claim, and that plaintiff has not alleged sufficient facts to show that the construction or operation of the Yazoo Backwater Project caused its injury. For the reasons set forth above, defendant's Motion to Dismiss is hereby **GRANTED**. The Court directs the Clerk to enter judgment accordingly.

-8-

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge